The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye. All persons and the business before this Honorable Court are admonished to turn your attention as the Court is now sitting. God save the United States and this Honorable Court. Good morning, ladies and gentlemen. Our first case for argument this morning is United States v. Edwards. Ms. Cruz. Good morning, and may it please the Court. My name is Nancy Cruz of Michael Besson Friedrich, and I represent Appellant Mr. Jeremiah Edwards. This appeal arises from the conviction and sentencing of Mr. Edwards for a 2018 armed robbery of an auto parts store in Madison, Wisconsin. While today we address issues specific to Mr. Edwards' case, it is important to note the broader implications that this all-too-familiar story has on our justice system. Throughout the entirety of this case, we saw how Mr. Edwards suffered the consequences of the government's unconstitutional conduct. Today we are seeking this Court overturn Mr. Edwards' conviction and grant him a new trial as his case was replete with errors which cumulatively robbed Mr. Edwards of his fundamental rights and resulted in a non-constitutional conviction. In the interest of time, while we maintain our position that all errors are sufficient to warrant reversal, and will gladly address any questions this Court may have, we would like to focus on three main issues. First, the removal of Juror No. 11, second, the Brady violation, and third, the suggestive identification. Of all the issues... I wonder if you might address, Ms. Cruz, the question of the so-called second search of the vehicle, just for a moment. Absolutely, Your Honor. The primary question I have for you was, or is, was that a search? Yes, Your Honor. Although the government attempts to frame the fact as though Detective Johnson's entry was simply ministerial, Detective Johnson was aware that there was a reasonable expectation of privacy in the vehicle despite the fact that it was impounded, and he should have requested a warrant before entering, which he did after he found the evidence. Well, after he found there was incriminating evidence in the car, he withdrew and got a warrant, as he should have, but the question is, when he went into the car the first time, his purpose was to retrieve a personal article belonging to one of the defendants. At the request of the defendant's lawyer, is there any regulation or statute in the state of Wisconsin that prevented him from breaking the seal and entering the car to retrieve that? Was he in violation of the law when he did that? Well, Your Honor, Detective Johnson's actions constituted an official intrusion into a private sphere, which, as established in Smith v. Maryland, qualifies as a search and required a search warrant to be supported by probable cause. The car was impounded and sealed. It was in the custody of the government, wasn't it? That's correct, Your Honor. However, by the fact that the government seeked a warrant after finding the evidence, that demonstrates that the law enforcement was aware that there was a reasonable expectation of privacy in the vehicle despite it being impounded. Just one more line of inquiry and I'll let you get on with your presentation, okay? Is there a regulation or an ordinance or a statute in the City of Madison that permits an inventory search of a vehicle? No, Your Honor. Oh, not that I'm aware of, Your Honor. Okay, thank you very much for your time and I'd like you to go on with your argument. Ms. Cruz, I have one follow-up question to that, please. How could he have had a reasonable expectation of privacy in this vehicle that the evidence seems uncontested that he had abandoned when he crashed it and ran away? Actually, the government, Your Honor, the government waived the argument that the vehicle had been abandoned. That argument was brought up in the report and recommendation by Magistrate Judge Crocker. I'm not asking about waiver, though. I'm just, my question to you is how could there have been a reasonable expectation of privacy? You've said that several times in response to Judge Ripple's questions, but it does seem uncontested based on the magistrate's findings and the district court's findings that he abandoned the car after he crashed it and ran away. How could he have any reasonable expectation of privacy in the vehicle at that point? Your Honor, Mr. Edwards contacted the owner of the vehicle and asked that they report it stolen. With that in mind, he never abandoned the vehicle or the vehicle was never abandoned, which is why the argument was never brought up in the first place. Turning to my first point, the district court abused its discretion by removing juror number 11 from the jury panel. The relevant inquiry when deciding whether to remove a juror at trial is whether a juror is able to remain impartial and perform his or her duty to apply the law to the facts and follow the court's instructions. The government fails to cite any case law in support of its position and merely summarizes the course of events, concluding that the facts support the district court's decision. But here, nothing in the record demonstrates a legitimate basis for the district court's decision to strike juror number 11. Ms. Cruz, juror 11, number 11, told the judge when the judge inquired about the juror's and I'm quoting, I believe that what I observed may affect my opinion as to the credibility of witnesses. Given that statement, how can we conclude that the district court abused its discretion in striking juror 11? Your Honor, it's the jury's job to judge credibility, and the jury was, in fact, instructed to not only consider witnesses' demeanor while testifying, but also to consider, and I quote, any other factors that shed light on the believability of each witness' testimony. But the court had said that this was not an issue that should impact the jury one way or the other, and the juror said, I believe it might impact the credibility of witnesses. After that, Your Honor, the district court instructed the juror to disregard what he witnessed, and the juror testified that he would. And in fact, he erroneously instructed the juror to disregard what he witnessed because the jury was instructed from the beginning to consider any factors, and it was the government's own, you know, the consequence of the government's own misconduct that led to this issue in the first place. The record established and the district court acknowledged that the two detective witnesses engaged in inappropriate and unprofessional conduct at the expense of Mr. Edwards. Rather than granting a mistrial, the district court instead rewarded the government for its misconduct by disregarding the witness' behavior and relying on an incorrect legal theory that jurors cannot consider a witness' disingenuous, even though they are explicitly instructed to do so. We are reminded by the 11th Circuit in United States v. Brown that the right of a jury of one's own peers is sacred in our legal system, and the court's responsibility is to, and quote, in all cases, guard against the removal of a juror who aims to follow the court's instructions based on his views on the merits of a case. Here, the district court abused its discretion by failing to do so. The juror testified to the court that he could be impartial, and the district court found him credible. And although the juror testified that it may affect his credibility determinations against the government, that was not biased or an inability to be impartial and determine the outcome of the case based on the evidence presented to him. In fact, the district court acknowledged and agreed that this was, in a way, a punishment to Mr. Edwards, and instead of granting him a mistrial, simply struck the juror and Mr. Edwards suffered the consequences. Turning to my second point, the district court abused its discretion by denying Mr. Edwards' motion for a new trial on the ground that the government withheld exculpatory evidence. The evidence for Mr. Edwards can demonstrate each of the three crimes of Brady v. Maryland. First, the evidence was indeed favorable to Mr. Edwards. Not only did it provide a complete defense to the robbery charges against them, the government argues that it was not favorable by attempting to characterize the evidence as cumulative because the statement simply demonstrated Ms. Burrell's flip-flopping on the alibi. However, the government is mistaken, Your Honors. The statement's content contained more information than simply another example of flip-flopping. The government argues that the evidence was inculpatory because Ms. Burrell was not a credible witness. However, that's a question for a jury and not for the government. The government's straightforward and simple duty here was to turn over a piece of evidence that was clearly favorable to Mr. Edwards. Additionally, the evidence was willfully suppressed by the government. Even if trial counsel had interviewed Ms. Burrell after the government referenced in her recantation of the recantation, there's absolutely no way to ensure that Attorney Jones could have obtained the information contained within the report, the statement that she made to law enforcement. And as noted in the appellant's brief, this court has previously recognized a limit to the diligence requirement and has reasoned that certain information simply cannot be obtained despite a defense attorney's diligent efforts to investigate. By concealing the report, the government purposely placed Mr. Edwards in an untenable position and deprived him of an opportunity to work on his theory. Finally, Mr. Edwards has demonstrated that at least two errors were committed in the district court, which cumulatively denied him of his constitutional rights to a fair trial. Thank you, Your Honors. Thank you, counsel. Mr. Graber. Thank you, Your Honors. Good morning. May it please the court, my name is Dan Graber. I represent the United States of America. I handled the case down below at the pre-trial stage, the trial stage, and the post-trial stage and the sentencing. Let me begin with just with the Brady issue that counsel left off on. There was no Brady violation. It's a red herring, Your Honors. The January 19th report that they're claiming is a Brady document is not. It was not favorable to the defendant. Ms. Burrell, in that report, never backed off her confession on the 16th that she said on the 16th when they did the search warrant, yep, you know what, the alibi is false. The music files that I gave you, I backdated all that stuff. She never backed away from that on the 19th. What she backed away with on the 19th was events that happened the day before. It was not helpful to the defendant, that document. Mr. Graber, why wasn't this turned over? It wasn't turned over because it wasn't Brady. It wasn't Rule 16. It wasn't giggly of a government witness. It wasn't Jenks Act materials. It was cross-examination materials, and I don't turn over my cross-examination materials. I had a lot of materials against the defendant and his witnesses, and I don't turn those over to the defense. As long as it's not constitutionally required or under Rule 16 or the Federal Rules of Order, it doesn't get turned over. Had you turned over the January 18th report? I think that was turned over. That was turned over, and that was turned over to show them it was part of a notice to say, look, your alibi witness, if you're going to trial because you think you have a strong alibi, think again. Your alibi witness went south on you, and they knew about that, and that augers into prong two of Brady that they knew about the flip-flopping and the reasonable diligence requirement that Judge Peterson found. She actually sat down on January 30th with Mr. Jones at the UW Law Library and told him, I'm not going to testify for you. I'm not your alibi witness. I'm not going to lie under oath. They knew about that, and I, in the record, when I filed the timeline right before the trial hearing on the 5th, I walked through all the different things that she had said, starting with on November 13th, five days after the robbery, we talked to her and said, when was the last time you saw him? I haven't seen him in weeks. Well, we've got the thing showing on the Franks hearing. We've got the videotape, you going with your dog and him to go find his keys because he lost his keys to the Outlander during the robbery of Neal's Liquor. Oh, yeah, yeah, I saw him on the 4th. Well, when was the last time you saw him after that? I haven't. Now, if she was an alibi witness, she would have said, no, I saw him on the 8th and we made music together, but she didn't do that. So they had evidence that she was flip-flopping from early on, and that's why Judge Peterson was correct in his finding that they couldn't meet the second prong, that the evidence had been suppressed and that an attorney exercising reasonable diligence would have found it. And I just want to make a point with Boss v. Pierce, which they cite in their brief for, you know, Judge Peterson is stretching that reasonable diligence requirement too far. Boss v. Pierce helps us. It doesn't help them. That's a situation, Your Honors, where it says, well, if you remember in that case, Boss v. Pierce, the defendant saying my girlfriend is my alibi witness and my girlfriend's sister was there too, and the state withheld the sister's 302, and the court said, look, you can't expect a defense attorney. He doesn't know who that person is. He doesn't know what that person's role is. He doesn't know whether that person's going to be uncooperative or relevant, whether they're going to forget stuff or inadvertently omit stuff, and therefore you should have turned it over. That's totally different from our case. Connie Burrell was his witness. He's the one that told us about her and said she was going to be my alibi. She talked to him on the 19th. She went to jail and talked to him, and he put a thing up against the window because he was being recorded that said, Connie, don't talk to the cops because they'll use it against the two of us. He's telling his alibi witness, don't talk to the cops. So they had access to her. They were talking to her. They were telling her not to use the evidence, not talk to the government about the alibi. So there just wasn't a Brady issue. And the third prong they can't meet to show that there was a reasonable probability that had the evidence been disclosed, the result of the proceeding would have been different. Judge Peterson walked through that. First of all, they say in their brief, well, if we'd known about that January 19th report, the defendant would have called her and he would have withdrew his alibi. Really? Where's the record? Where's the evidence for that? There is nothing. As Judge Peterson said in his order, where's the affidavit from Jeremiah Edwards saying that? Where's the affidavit from Connie Burrell saying that? There's absolutely no evidence in the record. The evidence in the record is to the opposite. We submitted a February 6th interview report saying, I'm not going to be your alibi witness. I'm not going to lie. And she told her, the defendant's attorney that on January 30th. That's why the Brady issue is a non-issue. The second issue, excluding juror number 11. Judge St. Eve, as you correctly point out, this witness said, I'm looking at something behind the bar. That's not evidence. That's not evidence. And Judge Peterson tried to explain, look, what happens in front of the bar is evidence. What happens behind the bar is not evidence. You can't use that. And I think it's Bauer instruction 2.0. We use it in every trial. What's evidence? Evidence includes only what witnesses say when they're testifying under oath, the exhibits that I allow to evidence and any fact which the parties stipulate. Nothing else is evidence. When they're trying to make this witness credibility argument, they're failing to see. You only are able to look at what the evidence is, what the witness is testifying about in the exhibits. The fact that he's saying, look, I don't trust what Leslie's saying because of what Leslie said behind the bar. That's improper. I don't trust what Caleb is saying because of what Leslie's doing behind the bar. That's improper. And that's what Judge Peterson was trying to get at. And when he asked him, can you ignore that? Well, if you're telling me to, I will. And Judge Peterson said, you know what? The reason I'm going to exclude him is because I can't trust that he's going to purge it and that he's going to follow my instructions. Mr. Graber, how do you respond to the argument that there seems to be a bit of unfairness to this, given that it was the government's witnesses' unprofessional conduct that caused this problem in the first instance? And Judge Peterson did find that the conduct was unprofessional. He found it was unprofessional, but didn't warrant to rise to the level of a sanction of dismissing the case or ordering a new trial. That's the difference. He made the specific finding, Judge, that these two people did not coach, that that was not going on and that this witness was operating under that misapprehension and looking at evidence he shouldn't have looked at. And the judge found that that was so salient and so disturbing to that witness that the juror actually had to raise his hand and say, mid-trial, I want to talk to the judge about this. And Judge Peterson was in the best position to make this call because he's the one that talked to that juror two times. He's the one that was able to assess his credibility and his intent and how he was doing. And Judge Peterson had two other alternates that he knew didn't have that taint and knew he didn't have to worry about the risk of them not disobeying his orders. And that's why he made that decision. And that's not abusive discretion, Your Honors. The warrantless search issue that they bring up, the third issue that I'd like to talk about, Judge Ripple, yes, is it a search? Here's the deal. Probable cause decides whether something is an unreasonable search or not. There was probable cause to go into that car after it was, after the defendant crashed and ran away from it and fled to Chicago. They got a warrant. They should have found the gun in the hat, but they didn't because it was hidden in a hidden compartment. As you correctly note, it was impounded. This isn't a situation where it was released and a new fax could have. It was frozen in time. When he went in a second time, he didn't go in to search the car to find evidence against the defendant. He went in to find a purse for the co-defendant. What's the test that we apply to determine if it's a search or not? Well, I think regardless, I don't know whether there's a test to apply for what's at the search, Judge. I think the issue was, is there a probable cause in looking at his privacy interest, however minimal that his privacy interest is versus the probable cause to go in there? And when Caleb went in there, he wasn't searching for evidence against this man. The magistrate judge found that it was a ministerial re-entry and the district court agreed. I'm not sure where that comes from in the law. Well, I mean, I think what he was trying to do is say, look, you're allowed to go in that car. You had to go in the car to tow it back to the parking lot. So you go in there for that reason. You don't have a search warrant, but you go in there to do an inventory search. You don't need a search warrant. There's times when you go in there and you're not performing a fourth amendment search in the vehicle. And this was one of those times. And I think it's fact-based. I don't know whether there's a test limits. I think it's more fact-based than the facts in this case. And here's the other issue, judges. We did get a second search warrant. They're not challenging. The way this should have been set up was there should have been a second. We got a second search warrant. You want to attack the second search warrant, go ahead. You want to say that Beth Boxwell did a Frank's issue? They never challenged that. So we've got Leon Goodfaith to rely on. And we dissipated any taint by making full disclosure of what happened to the issuing judge in that second warrant. So that second warrant, you know, this whole thing about, well, we got the gun in the hat on a warrantless search. No, we actually got a search warrant. We followed the law. We did what we were supposed to do when we wanted to do a fourth amendment search. So the other issue that I want to touch on that they didn't bring up in their argument just is the other issue is on this Brown case with excusing juror number 11. Brown doesn't apply. That's an 11th Circuit case, not a 7th Circuit case. Brown deals with the issue of dismissing a juror in the middle of deliberations versus dismissing a juror during trial. It's two separately different situations. And the 11th Circuit in that case is using this high standard saying you have to prove beyond a reasonable doubt that this juror wouldn't follow the law and wouldn't follow the court's instructions. That's not the law in this circuit. It's a totally different posture. It's a different circuit. It's not the law in this circuit. So Brown just doesn't apply. The other issue is on the suggestive ID issue pre-trial that they were making the argument the Biggers factors don't apply. Regardless of prong one, the court found, look, prong one was violated. They showed a single photograph. It's suggestive. Let's go to prong two under the five Biggers factors. Is it reasonable? And both Magistrate Judge and Judge Peterson found it is reasonable. The Biggers factors have been met. Kenosha Woods testified. We found and we watched the video where Caleb went through the five factors. And there's a record to support every one of those five factors. They're coming back in the rebuttal brief and saying, no, the five factors don't exist because the photograph that was shown in the binder prejudiced her and affected her ability to make a determination. It basically, it tainted her in the sense that she made the identification based on the prior looking at him at the temple. Judge Peterson dealt with this issue and said, look, the fact that she was high, the fact that she had poor vision and the fact that she was stressed out from having a gun pointer in their face. I don't buy that because she was with the guy twice at the temple and three hours in the car. And that's enough time to do an I.D. In rebuttal, they come back with this new thing called memory source confusion. Look in the rebuttal brief, pages 10, 11, 12, memory source confusion. They never raised that with Judge Peterson. They never raised it in their opening brief. It's a brand new argument they're coming up with to say, oh, well, that's why she's confused as memory source confusion. They cite four different law review articles. This was never brought up in the opening briefing. None of this was ever brought up for Judge Peterson. That's simply, you can't use that now to try to back away on the bigger factors. The last issue that I want to just address real quick is this cumulative error doctrine that, well, wait a minute, we're raising seven claims here. We're throwing them against the wall. Something's got to stick. And if we get at least two, then we can argue a due process violation. There was no due process violation. This defendant had due process all the way. He wanted a Frank's hearing. He got one. He wanted a suppression hearing. He got one. He wanted a suggestive ID hearing. He got one. He was able to cross-examine these witnesses at trial. He was allowed to bring his theory of defense that he was framed. He called five cops to try to prove that. He had the opportunity to take the stand, to call Connie to put those files in. He didn't. He had the opportunity to brief this issue in front of two judges, brief it post-trial. The judges rejected his claim. The jury rejected his claim. And I'm asking this court to reject his claim as well and to affirm the judgment of the district court. Thank you. Thank you, Mr. Graber. Mr. Ellison. May it please the court. My name is Curt Ellison. I'll be arguing on behalf of Appellant Jeremiah Edwards. The government argues in response that the errors in this case are not harmless. However, the errors in this case cannot be overlooked as harmless. The reason Mr. Edwards focuses on the removal of Juror 11 and the Brady violation is not because the other errors are not prejudicial. Because these demonstrate the most stark example of the injustice in this case. As the panel correctly was questioning related to the observations of Juror 11, really this caused the district court itself to question the fairness of the proceeding. Imagine sitting in Mr. Edwards' shoes and having the district court state that showing of the photograph of Mr. Edwards to Kenosha Woods in the interrogation really has resulted in, quote, a tremendous waste of time and really does undermine our sense of fairness of the process. Further, the district court agreed with Mr. Edwards that essentially Mr. Edwards was being punished for the government's misconduct. I want to clarify that the observations of Juror 11 are, in fact, permissible observations. Any trial counsel that is preparing their party, regardless of which side they are on, is telling them that they are being observed by the jury at all times when they are in the courtroom. The cases cited in our brief, United States versus Calabresi, is an illustration of this and the potential damage that can occur or manipulation to the system that can occur if this conduct is not permissibly observed. In that case, it was a defendant whose unruly conduct was observed by a juror, and that observation was found to be acceptable as it can be expected that the defendant's conduct will be observed at all times. Remember that the government argued to have Detective Keefe present in the courtroom. They wanted her there as a case agent, and the juror's observation was also that she was not only interacting from behind the bench, she was interacting and assisting the prosecution by passing notes back and forth to counsel tables. That was an observation of Juror 11. She was a party to this case and assisted in the prosecution. Her conduct was fair game for the jury. Furthermore... How can you say that, Mr. Ellison, when the district court made the specific factual finding that she was not coaching, that she was just acting unprofessionally but not coaching? Well, for one, the district court is not the finder of fact. It's the juror's determination as to what... The district court absolutely is entitled to make that finding. The district court is the gatekeeper as to what's evidence and what isn't. But the district court further conceded that it didn't observe the conduct, so the juror was better positioned to make its determination as to what, in fact, it witnessed. It was only... So are you arguing that the juror should have been able to consider its view that she was is that your argument? That is my argument. The juror... The instruction of the district court tells Juror 11 to disregard what it had observed is legal error. That juror's perspective should have gone into the jury's deliberations. It was a permissible observation as to the credibility of a testifying witness and a government case agent. Detective Johnson's reactions to Detective Keefe are what he was doing while he was testifying on the stand. The juror was merely doing what he was instructed to do. Furthermore, in relation to the Brady argument raised by the government, really, when we look at reasonable diligence, Mr. Edwards was placed in an untenable position. The government was asserting that Mr. Edwards was influencing Ms. Burrell in how she would testify. This report contradicts that. Of course, it is exculpatory because it shows that she returned to her original alibi, and she did so not because of Mr. Edwards, but she did so based on her attending religious services and having a change of heart. That is exculpatory evidence. And if the court corrects the question, why was this document withheld when the other reports were turned over? Thousands of pages of documents, and this one report is not turned over. Furthermore, we really have to question, with all of these things going on, can we have serious concerns over the conviction? And it really is a small sacrifice to award Mr. Edwards a new trial in order to secure his constitutional rights. Thank you. Thank you, Mr. Ellison. The case is taken under a